# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **JO E. MARKS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.:  **5:07-CV-2138-RDP** |
| } | |
| **MICHAEL ASTRUE, Commissioner of** } | |
| **Social Security,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Plaintiff Jo E. Marks brings this action pursuant to Section 205(g) of the Social Security Act (the "Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and Supplemental Security Income Benefits ("SSI"). *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.     Procedural History**

Plaintiff filed her application for a period of disability and SSI on January 10, 2006. (Tr. 39). Plaintiff's application was denied. (Tr. 24-26). Thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 31). The hearing was held on May 9, 2007, before ALJ Robert Hodges. (Tr. 370). In his July 2, 2007 decision, ALJ Hodges determined that Plaintiff was not eligible for a period of disability because she failed to meet the disability requirements of the Act and retained the residual functional capacity ("RFC") to perform jobs within her applicable restrictions that exist in the economy in significant numbers. (Tr. 11-21). Plaintiff requested that

the Appeals Council review the ALJ's unfavorable decision. (Tr. 7). The ALJ's unfavorable decision became the final decision of the Commission when it denied Plaintiff's request for review. (Tr. 4-6). Within the required time limitations, Plaintiff filed her civil action in this court.

## II.     Statement of Facts

Plaintiff was born on September 26, 1961. (Tr. 39). She originally claimed a disability onset date of October 31, 2003, which was later amended to claim an onset date of July 7, 2006. (Tr. 45, 47, 59). In 1975, Plaintiff left high school while in the ninth grade. (Tr. 64, 378). She did not obtain a GED or continue with any vocational education. (Tr. 378-79). Plaintiff claims she is disabled due to the following illnesses or conditions: chronic obstructive pulmonary disease ("COPD"), heart problems, back problems, depression, and arthritis. (Tr. 59). The ALJ found that Plaintiff had a severe combination of impairments including degenerative disc disease, COPD, hypertension (high blood pressure), major depressive disorder, diabetes mellitus, and obesity. (Tr. 13).

Plaintiff's last relevant work was as an egg collector. (Tr. 51). Plaintiff had worked in this position from 1998 until she resigned her employment on July 7, 2006. (Tr. 51, 384-85). Prior to that, Plaintiff had worked as a housekeeper at a motel, pulled and stacked lumber at a sawmill, made aluminum window frames, and worked as a chicken grower. (Tr. 67-75, 383-84). Plaintiff is able to read, prepare meals, shop for her personal needs, do laundry and dishes, do some cleaning around the house, and she can drive a car. (Tr. 77-78, 382).

Prior to late 2003, Plaintiff had not seen a doctor in years due to a lack of insurance. (Tr. 95). In December 2003, Plaintiff sought to establish care with Cullman Internal Medicine. (Tr. 95-98). Despite a host of medical complaints between 2003 and July 2006, Plaintiff was able to maintain

employment as an egg collector. (*See* Tr. generally; Tr. 51, 384, 386). When Plaintiff was first seen at the Addison Health Center in December 2003, she reported that she smoked two packs of cigarettes per day. (Tr. 198).

In January 2004, Plaintiff had a chest x-ray at Cullman Regional Medical Center which revealed that her lungs were clear and her heart was of normal size. There had been no significant changes since a study done in 1999. (Tr. 112). In March 2004, Plaintiff underwent a coronary catheterization which revealed no significant coronary artery disease, but the health care provider suspected coronary spasms. (Tr. 125).

In May 2004, Plaintiff was examined for right upper quadrant abdominal pain and reflux symptoms. (Tr. 130). Testing revealed a small hiatal hernia and Plaintiff was diagnosed with a hiatal hernia/GERD and gastritis. (Tr. 130). In July 2004, Plaintiff underwent a biopsy for a palpable breast mass that turned out to be benign tissue with fat necrosis. (Tr. 141). In October 2004 and April 2005, Plaintiff again sought treatment for upper right quadrant pain. She was diagnosed with a fatty renal lesion, but no acute disease. (Tr. 159-61).

In September 2004, Plaintiff was treated for abnormal uterine bleeding, endometrial hyperplasia and an ovarian cyst. She underwent a total abdominal hysterectomy without difficulty. (Tr. 145). Upon discharge on September 11, 2004, Plaintiff was diagnosed with: abnormal uterine bleeding; endometrial hyperplasia; ovarian cyst; hypertension; borderline left ventricular enlargement; and COPD. (Tr. 145). Again in September 2004, Plaintiff was seen at Chest Medicine of Cullman with complaints of chest pain, shortness of breath, and coughing. She was found to have normal coronaries. (Tr. 170). Plaintiff reported having smoked for thirty years. (Tr. 171). An MRI showed no chestwall lesions. (Tr. 172).

In January 2005, Plaintiff's COPD was assessed and determined to have remained the same. (Tr.169). She reported that her chest pain was relieved with nitroglycerin. (Tr. 296). Plaintiff was advised to stop smoking and informed that she would suffer further pulmonary decline with ongoing tobacco use. (Tr. 169). In July 2005, Plaintiff was seen for a scheduled follow up regarding her COPD. Plaintiff reported that her breathing was about the same, but she was feeling better. She reported that she continued to smoke a pack of cigarettes each day. (Tr. 163). The assessment of Plaintiff was that her COPD was stable, but she was advised to cease tobacco use. (Tr. 164).

Also in July 2005, Plaintiff underwent an MRI due to complaints of back and hip pain. This revealed a small disc protrusion at L4-5 with mild left neural foraminal stenosis and mild degenerative changes. (Tr. 204). Plaintiff received a series of epidural blocks to help alleviate the pain in her hip and back. (Tr. 221-24). Nerve conduction studies performed in October 2005 revealed no electrodiagnostic evidence to suggest acute radiculopathy, generalized neuropathy or myopathy contributing to her pain complaints. (Tr. 233-35).

Although Plaintiff's medical records are unclear as to when she was diagnosed with depression, in January 2004, Plaintiff reported that her symptoms were helped by Paxil. (Tr. 195). Later, in July 2005, Plaintiff denied any anxiety or depression. (Tr. 164).

At Plaintiff's disability assessment in March 2006, Plaintiff reported that she was working part-time collecting eggs. She reported multiple problems, including breathing problems, hypertension and back pain. (Tr. 248). She was still smoking a pack of cigarettes a day at this time. (Tr. 252). The examining psychologist, Dr. Haney, diagnosed her with major depressive disorder, moderate to severe, with suicidal ideation, and borderline intellectual functioning. (Tr. 252-53). The day of her interview with Dr. Haney, Plaintiff presented to the emergency room complaining of a

4

headache. (Tr. 256-58). A CT scan of Plaintiff's brain revealed no acute intracranial abnormality. (Tr. 259).

**III.    ALJ Decision**

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform [her] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

5

The ALJ determined as follows: that Plaintiff had not engaged in substantial gainful activity since July 7, 2006; and that she suffered from a severe combination of impairments, but that her combination of impairments did not meet or equal one of the impairments found in the Listings, 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13). After consideration of the record as a whole, the ALJ found that, although Plaintiff could not perform past relevant work, Plaintiff had the RFC to perform unskilled, sedentary exertional work. (Tr. 14-21). Considering her RFC, age, education and work experience, the ALJ found that a significant number of jobs were available in the national economy that Plaintiff could perform, such as surveillance monitor, table worker and assembler. (Tr. 14-21). Therefore, the ALJ determined that Plaintiff had not been under a disability as that term is defined by the Act since July 7, 2006. (Tr. 21).

## IV.     Plaintiff's Argument for Remand or Reversal

Plaintiff advances three arguments in support of her position that the ALJ's determination should be reversed: (1) the ALJ improperly discredited Plaintiff's subjective testimony regarding her pain; (2) the ALJ asked improper hypothetical questions to the vocational expert; and (3) the ALJ improperly weighed Dr. Haney's disability determination opinion.

## V.      Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court

may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI.    Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for reversal and remand. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

### A.    The ALJ Properly Weighed Plaintiff's Subjective Complaints of Pain.

Plaintiff argues is that the ALJ improperly discredited Plaintiff's subjective testimony regarding her pain. The law that governs subjective complaints of pain is well-settled:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See*

> *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (some citations omitted)

In this case, Plaintiff carried her burden to establish that she has an underlying medical condition that can give rise to the pain from which she claims to suffer. However, the ALJ discredited her testimony about the severity of the pain and the limiting effects of the pain, relying on (1) medical evidence, (2) documented observations of Plaintiff's behavior, and (3) inconsistencies in her behavior. (Tr. 16-19).

The ALJ noted that Plaintiff's back pain stemmed from a work injury in 1998, yet she continued thereafter to work as an egg gatherer. (Tr. 16-19). Plaintiff testified that up until July 7, 2006, she worked 3-4 full days per week collecting eggs for Larry Dutton. (Tr. 384-85). Further, although she stated that she eventually stopped working in this capacity because her back hurt (Tr. 386), the ALJ found that medical observations of Plaintiff in 2004 and 2005 showed a normal gait and that she was observed to sit comfortably despite complaining of pain at an 8/10 level. (Tr. 225). Plaintiff reported having received good relief from a steroid block in 2004. (Tr. 16). Despite continuing complaints of pain, Plaintiff did not take any medicine to relieve her back pain.[1] Although she received some medicines from a free clinic, pain relief for her back is not one of them. (Tr. 16-17, 398-99). The ALJ also noted a variety of daily activities which was inconsistent with her

---

[1] Plaintiff argues she could not afford pain medication. However, she received some free medications from Good Samaritan and presumably may have been able to obtain pain medication there. Moreover, her purchase of tobacco products during the relevant time-frame indicates she has some disposable income for over the counter pain medication.

alleged pain level. (Tr. 19). The ALJ noted that Plaintiff does laundry, dishes, vacuums, shops and drives. (Tr. 19).

"If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219 1225 (11th Cir. 2002). Here, the ALJ articulated that Plaintiff's medical records and her objective behavior rendered her subjective complaints of pain not fully credible. (Tr. 16-19). Thus, the ALJ adequately articulated explicit reasons for discounting Plaintiff's subjective complaints of pain. These reasons are supported by the record and the correct legal standards were applied. Therefore, the court finds no error in the ALJ's determination to partially discredit Plaintiff's subjective testimony regarding the extent of her pain.

      **B.**      **The ALJ Did Not Ask Improper Hypothetical Questions of the VE.**

At the hearing, the ALJ examined the vocational expert ("VE") as follows:

Q:    Let's look at Dr. Varkez's [sic] assessment for purposes of the first hypothetical. If you assume a person of the Claimant's age, education, past relevant work experience. And if you assume that with moderate or less pain she could sustain the physical demands of work within the limitations assessed by Dr. Varkez in Exhibit 23F. And if you assume that her ability to respond to the mental demands of work would be as set forth by Dr. Fleece in Exhibit 20F at the mental residual functional capacity assessment. Would that allow for any past relevant work?

A:    No, sir. That precludes all past relevant work.

Q:    Any other work represented by significant numbers of jobs in the economy?

A:    Yes, sir, there would be.

Q:    Would you give me some examples please, ma'am.

A:    Yes, Sir. Some examples of unskilled sedentary work would included a surveillance monitor and there are approximately 300 of those in the region, hundreds of thousands nationally. Also a table worker, and there are approximately 400 of those in the region, and hundreds of thousands

>nationally. Also an assembler and there are approximately 400 in the region, and hundreds of thousands nationally.

(Tr. 409-10).

Plaintiff argues that this series of questions was inappropriate because it did not address absenteeism or the need for a sit-stand option. The ALJ's question asked the VE to take into consideration Dr. Fleece's mental RFC report. Dr. Fleece's report rates Plaintiff as moderately limited in her ability to perform activities on a schedule and maintain regular attendance. Therefore, the hypothetical posed by the ALJ – and therefore the answer by the VE – did address absenteeism. Further, the hypothetical posed by the ALJ also asked the VE to take into consideration Dr. Varquez's Medical Source Opinion which addresses Plaintiff's ability to sit, stand, and walk for certain durations. Therefore, although the question did not specifically ask the VE to consider those issues, by basing the hypothetical on Dr. Varquez's opinion, the question and the response inherently addressed those issues. Therefore, the court finds no error in the hypothetical questions posed to the VE.

Plaintiff also notes that Dr. Varquez placed some restrictions on Plaintiff's exposure to airborne particles due to her COPD. Plaintiff argues that the VE should have been specifically asked about this factor in the hypotheticals. This argument is without merit. First, this item is in Dr. Varquez's Medical Source Opinion which the VE was instructed to consider. Second, despite Plaintiff's complaints of breathing problems, she continued to smoke up through the date of the hearing, despite being repeatedly counseled by medical providers to cease smoking. (Tr. 403). She had, however, reduced her smoking to about a half a pack per day from a high of approximately three packs per day. (Tr. 403). If Plaintiff chooses to regularly and continually introduce smoke into her lungs on a recreational basis, she cannot be heard to complain if exposure to airborne particles was

not considered in evaluating available jobs. Nevertheless, as noted above, by considering Dr. Varquez's opinion, the VE considered this issue. Therefore, there was no error in the hypothetical questions posed to the VE.

### C. The ALJ Properly Weighed Dr. Haney's Disability Determination Opinion.

Finally, Plaintiff argues that the ALJ should have considered Dr. Fleece's mental RFC assessment in conjunction with Dr. Haney's "dire view" of Plaintiff's employability as a basis to find her disabled. The ALJ considered Dr. Haney's assessment of Plaintiff, but gave that assessment "little weight." The ALJ stated the reasons for that conclusion which are supported by the record. The ALJ noted that Dr. Haney's opinion was not consistent with his own examination of Plaintiff's mental functioning, and is not consistent with the records regarding Plaintiff's physical problems. (Tr. 19). Dr. Haney's report does not appear to be based upon a review of objective medical evidence. Rather, it appears to rely solely upon Plaintiff's report of her physical problems. Further, on the same day of Dr. Haney's assessment of Plaintiff, medical records note her mental status as "unremarkable." And subsequent to Plaintiff's consultation with Dr. Haney, she resumed treatment for her depression. (Tr. 19).

"The ALJ considers many factors when weighing medical opinions, including the examining relationship, the treatment relationship, how supported an opinion is, whether an opinion is consistent with the record, and a doctor's specialization." *See* 20 C.F.R. § 404.1527(d)(1)-(6); *Davis v. Astrue*, 2008 WL 2673876 * 5 (11th Cir. 2008). "In Social Security disability benefits cases, generally, the opinions of examining physicians are given more weight than non-examining physicians, treating physicians are given more weight than non-treating physicians, and specialists are given more weight on issues within their areas of expertise than non-specialists." *See* 20 C.F.R.

11

§ 404.1527(d)(1), (2), (5); *Davis*, 2008 WL 2673876 at * 5. The ALJ properly gave Dr. Haney's assessment little weight because he as not a treating physician, nor was his assessment consistent even with his own evaluation of Plaintiff. In doing so, the correct legal standards were applied. Therefore, the ALJ did not err in giving Dr. Haney assessment of Plaintiff little weight.

**VI.    Conclusion**

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this    6th    day of March, 2009.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE